FOR PUBLICATION

IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

|  |  |  |
|---|---|---|
| HON. LEON A. KENDALL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil No. 2007-126 |
| SEN. RONALD E. RUSSELL, LUIS | ) | |
| MORALES, ROBERT O'CONNOR, JR., | ) | |
| ROBERT MOLLOY, and BRUCE MARSHACK, | ) | |
| in their capacity as Members of the | ) | |
| Virgin Islands Commission on | ) | |
| Judicial Disabilities, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

ATTORNEYS:

Howard M. Cooper, Esq.
Julie E. Green, Esq.
Boston, MA
     *For the plaintiff.*

Maria T. Hodge, Esq.
St. Thomas, U.S.V.I.
     *For the defendants.*


<u>MEMORANDUM OPINION</u>

GÓMEZ, C.J.

     This matter is before the Court for a decision following a consolidated hearing on the plaintiff's motion for injunctive relief and a bench trial on the merits conducted on December 13, 2007.  The Court, having considered the parties' various pleadings, witness testimony, exhibits, and the arguments of

*Kendall v. Russell, et al.*
Civil No. 2007-126
Memorandum Opinion
Page 2

counsel, now enters this Memorandum Opinion pursuant to Rule

52(a) of the Federal Rules of Civil Procedure.[1]

## I. <u>FINDINGS OF FACT AND PROCEDURAL BACKGROUND</u>[2]

On September 9, 1976, the Legislature of the Virgin Islands

(the "Virgin Islands Legislature" or the "Legislature") passed

Act No. 3876 ("Act 3876" or the "Act"),[3] which established the

Virgin Islands Commission on Judicial Disabilities (the

"Commission").  Act 3876 is codified at Title Four, Sections 651

through 659 of the Virgin Islands Code, and took effect on

January 1, 1977.

Act 3876 empowers the Commission to retire or remove a judge

of the Superior Court of the Virgin Islands or a justice of the

Supreme Court of the Virgin Islands. *See* V.I. CODE ANN. tit. 4, §

651.  The rules governing removal and involuntary retirement

proceedings are found in Section 656 of the Virgin Islands Code,

which provides, in part:

---

[1]  Pursuant to Federal Rule of Civil Procedure 52(a), the
Court may enter judgment following a trial without a jury. *See*
FED. R. CIV. P. 52(a).  In making a decision following a bench
trial, "the court must find the facts specially and state its
conclusions of law separately." *Id.*

[2]  To the extent that any finding of fact reflects a legal
conclusion, it shall be deemed a conclusion of law, and vice
versa.

[3]  Act of Sept. 9, 1976, No. 3876, § 3, 1976 V.I. Sess. Laws
192.

*Kendall v. Russell, et al.*
Civil No. 2007-126
Memorandum Opinion
Page 3

(a) (1)  A judge of the Superior Court or justice of the
Supreme Court of the Virgin Islands shall be
removed from office upon the filing in the
district court by the Commission of an order of
removal certifying the entry, in any court within
the United States, its territories and possessions
or the Commonwealth of Puerto Rico, of a final
judgment of conviction of a crime which is
punishable as a felony under the law of the Virgin
Islands.

(2)  A judge of the Superior Court or justice of the
Supreme Court of the Virgin Islands shall also be
removed from office upon a determination by the
Commission of-

(A)  wilful misconduct in office, or

(B)  wilful and persistent failure to perform
judicial duties, or

(C)  any other conduct which is prejudicial to the
administration of justice or which brings the
judicial office into disrepute, such removal
to become effective upon affirmance of an
appeal from an order of removal filed in the
district court by the Commission (or upon
expiration of the time within which such an
appeal may be taken).

*Id.* at § 656.

Act 3876 further provides for the Commission to be composed

of five members.  Two members are appointed by the Governor of

the Virgin Islands, two by the President of the Legislature, and

one by the Board of Governors of the Virgin Islands Bar

Association.  Act 3876 provides for the members' compensation and

authorizes the Commission to make rules and regulations for its

operation.  The Act also sets forth rules regarding the

*Kendall v. Russell, et al.*
Civil No. 2007-126
Memorandum Opinion
Page 4

procedures the Commission must follow during removal and

involuntary retirement proceedings.  The Act further mandates

that such proceedings be kept confidential and provides for

orders of removal and involuntary retirement by the Commission to

be reviewed by this Court. *See generally id.* at §§ 651-659.

In addition to providing for the establishment of the

Commission, Title Four of the Virgin Islands Code more generally

provides for the organization of the judicial branch of the

Government of the Virgin Islands.  That title sets forth, *inter

alia*, provisions regarding the establishment and operations of

the Superior Court of the Virgin Islands[4] and the Supreme Court

of the Virgin Islands. *See generally* V.I. CODE ANN. tit. 4, §§ 71-

88, 21-34.  The judges of both the Superior Court and the Supreme

Court are subject to the Commission's review. *See id.* at § 651.

The plaintiff in this matter, Leon A. Kendall

("Kendall"), is a sitting judge of the Superior Court.  Kendall

was nominated by Governor Charles W. Turnbull in 2003 and

confirmed by the 25th Legislature of the Virgin Islands.

On or about April 26, 2007 and May 3, 2007, two complaints

---

[4]  The Superior Court was previously known as the
Territorial Court, which was established by the Legislature by
Act 3876.  Effective January 1, 2005, however, the name of the
Territorial Court changed to the Superior Court of the Virgin
Islands pursuant to Act of Oct. 29, 2004, No. 6687, sec. 6, § 2,
2004 V.I. Legis. 6687 (2004).

*Kendall v. Russell, et al.*
Civil No. 2007-126
Memorandum Opinion
Page 5

against Kendall were filed with the Commission.  Neither

complaint alleged that Kendall had been convicted of a felony.[5]

On November 16, 2007, the Commission notified Kendall that

it would conduct hearings regarding the two complaints on

December 13, 2007 and December 17, 2007, respectively.

Thereafter, Kendall brought this two-count action,[6]

generally alleging a violation of the Revised Organic Act of 1954

(the "ROA").[7]  Specifically, in Count One, Kendall seeks a

declaration from this Court that (1) the principle of separation

of powers, as contemplated by the ROA, prohibits the Commission

from conducting removal proceedings against him, and (2) Act 3876

is ineffective to authorize such proceedings because the

legislative branch of the Government of the Virgin Islands may

not grant itself the power to remove a member of the judicial

branch.  In Count Two, Kendall seeks injunctive relief to prevent

---

[5]  At the trial of this matter, Kendall sought to introduce
into evidence the complaints against him before the Commission.
The Defendants objected.  The Court took the matter under
advisement.  In reaching a decision in this matter, the Court has
not taken the complaints against Kendall into consideration.

[6]  Kendall has named as defendants the five current members
of the Commission: Senator Ronald E. Russell; Luis Morales;
Robert O'Connor, Jr.; Robert Molloy; and Bruce Marshack
(collectively referred to as the "Defendants").

[7]  The complete Revised Organic Act of 1954 is found at 48
U.S.C. §§ 1541-1645 (1995 & Supp.2001), *reprinted in* V.I. CODE
ANN. 73-177, Historical Documents, Organic Acts, and U.S.
Constitution (1995 & Supp.2001) (preceding V.I. CODE ANN. tit. 1).

*Kendall v. Russell, et al.*
Civil No. 2007-126
Memorandum Opinion
Page 6

the Commission from commencing or continuing removal proceedings

against him.

## II. <u>DISCUSSION</u>

### A.   Jurisdiction

#### 1.   Federal Question

While not stated explicitly, Kendall's challenge requires

this Court to review a violation of Act 3876.[8]  That is, the

threshold issue with which this Court must be concerned is

whether there is some legal organic authority that underpins Act

3876, the absence of which would obviate the thing of which

Kendall complains.  If Act 3876 was enacted without legal

authority, the necessary consequence would be enjoining the

Commission from pursuing removal proceedings.  This Court has

jurisdiction because that question implicates the ROA, a

federally-enacted statute. *See* 28 U.S.C. § 1331.

#### 2.   Standing

While a violation of a federal statute is within this

---

[8]  Kendall's claim focuses almost exclusively on the
principle of separation of powers, which applies in the Virgin
Islands by virtue of the ROA's establishment of three distinct
and separate branches of government. *See In re Richards*, 213 F.3d
773, 783 (3d Cir. 2000) ("[T]he doctrine of separation of powers
applies with respect to the coordinate branches of government in
the Virgin Islands.") (quoting *Smith v. Magras*, 124 F.3d 457, 465
(3d Cir. 1997)); *see generally* 48 U.S.C. §§ 1571, 1591, 1611.
Accordingly, at its core, Kendall's claim asserts a violation of
the ROA.

*Kendall v. Russell, et al.*
Civil No. 2007-126
Memorandum Opinion
Page 7

Court's jurisdiction, the Court must determine at the outset

whether Kendall has standing to bring this action.[9] *See*, *e.g.*,

*Addiction Specialists, Inc. v. Twp. of Hampton*, 411 F.3d 399, 405

(3d Cir. 2005) ("As a threshold matter, . . . we must first

address whether [the plaintiff] has standing to bring its . . .

claims in federal court.").   In addition to being a

constitutional inquiry, standing is also subject to certain

prudential limitations that reflect the need for judicial

restraint.[10] *See*, *e.g.*, *Joint Stock Soc'y v. UDV N. Am., Inc.*,

---

[9]   The Supreme Court has reminded the federal courts of the
importance of the standing doctrine:

> Much more than legal niceties are at stake here.   The
> statutory and (especially) constitutional elements of
> jurisdiction are an essential ingredient of separation
> and equilibration of powers, restraining the courts
> from acting at certain times, and even restraining them
> from acting permanently regarding certain subjects.
> For a court to pronounce upon the meaning or the
> constitutionality of a state or federal law when it has
> no jurisdiction to do so is, by very definition, for a
> court to act ultra vires.

*Steel Company v. Citizens for a Better Environment*, 523 U.S. 83,
101-02 (1998).

[10]   The Third Circuit has articulated the test for assessing
whether a party satisfies prudential standing as follows:

> [Prudential limits] require that (1) a litigant assert
> his [or her] own legal interests rather than those of
> third parties, (2) courts refrain from adjudicating
> abstract questions of wide public significance which
> amount to generalized grievances, and (3) a litigant
> demonstrate that her interests are arguably within the
> zone of interests intended to be protected by the

*Kendall v. Russell, et al.*
Civil No. 2007-126
Memorandum Opinion
Page 8

266 F.3d 164, 179 (3d Cir. 2001) ("The requirements of prudential

standing serve to avoid deciding questions of broad social import

where no individual rights would be vindicated and to limit

access to the federal courts to those litigants best suited to

assert a particular claim.") (internal quotations omitted).

> The Supreme Court has
>
> frequently explained, [that] a plaintiff must meet
> three requirements in order to establish Article III
> standing.  First, he must demonstrate "injury in fact"
> -- a harm that is both "concrete" and "actual or
> imminent, not conjectural or hypothetical."  Second, he
> must establish causation -- a "fairly . . . traceable"
> connection between the alleged injury in fact and the
> alleged conduct of the defendant.  And third, he must
> demonstrate redressability – a "substantial likelihood"
> that the requested relief will remedy the alleged
> injury in fact.  These requirements together constitute
> the "irreducible constitutional minimum" of standing,
> which is an "essential and unchanging part" of Article
> III's case-or-controversy requirement, and a key factor
> in dividing the power of government between the courts
> and the two political branches.

*Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529

U.S. 765, 771 (2000) (internal citations omitted).  The Court

"must accept as true all material allegations set forth in [the

plaintiff's] complaint and must construe those facts in favor of

the plaintiff[]." *Mariana v. Fisher*, 338 F.3d 189, 205 (3d Cir.

---

> statute, rule or constitutional provision on which the
> claim is based.

*Davis v. Phila. Hous. Auth.*, 121 F.3d 92, 96 (3d Cir. 1997); *see
also Oxford Assocs. v. Waste Sys. Auth.*, 271 F.3d 140, 145-46 (3d
Cir. 2001).

*Kendall v. Russell, et al.*
Civil No. 2007-126
Memorandum Opinion
Page 9

2003) (citation omitted); *see also Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293, 296 (3d Cir. 2003) (citing *Warth v. Seldin*, 422 U.S. 490, 501 (1975)).

Here, Kendall alleges that

he faces loss of his career, livelihood and reputation. The Commission's actions threaten to subject him to politically-motivated public humiliation . . . .

(Verified Compl. ¶ 31.)  Kendall further alleges that the true harm to his reputation will result not merely from already-published news articles, but from the Commission's removal proceedings themselves.

The Supreme Court has long recognized that an injury to reputation may satisfy the injury element of standing. *See*, *e.g.*, *Meese v. Keene*, 481 U.S. 465, 472-77 (1987) (holding that a potential distributor of foreign films had standing to challenge the Justice Department's characterization of films as "political propaganda" since it would affect "his personal, political, and professional reputation" and impair his ability to practice his profession); *Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 139 (1951) (holding that charitable organizations designated as "Communist" by the Attorney General had standing to challenge their designations because of, *inter alia*, "damage [to] the reputation of the organizations in their respective communities"); *accord United States v. Accra Pac, Inc.*, 173 F.3d

*Kendall v. Russell, et al.*
Civil No. 2007-126
Memorandum Opinion
Page 10

630, 633 (7th Cir. 1999) (holding that "being put on a blacklist

. . . is treated as immediately redressible harm because it

diminishes (or eliminates) the opportunity to practice one's

profession even if the list . . . does not impose legal

obligations").[11]

Similarly, in *McBryde v. Comm. to Review Circuit Council*

*Conduct & Disability Orders of the Judicial Conf. of the United*

*States*, 264 F.3d 52 (D.C. Cir. 2001), *cert. denied*, 537 U.S. 821

(2002), reputational harm was deemed sufficient to meet federal

standing requirements.   In that case, the plaintiff district

court judge received a public reprimand from the Judicial Council

of the Fifth Circuit for engaging "in a pattern of abusive

_____

[11]   In keeping with these precedents, federal courts have
found reputational injury sufficient for standing purposes.   The
Second Circuit, for example, found that a plaintiff assistant
manager of a federal credit union had standing to sue based on
harm to her reputation. *See Gully v. NCUA Bd.*, 341 F.3d 155 (2d
Cir. 2003).   In that case, the plaintiff sued the National Credit
Union Administration Board (the "NCUA").   The NCUA had found that
the plaintiff had "satisfied the criteria to sustain an order
permanently barring her from participating in the affairs of an
insured credit union," but ultimately did not issue such an
order. *Id.* at 158.   The plaintiff sued, claiming that the NCUA's
finding that she was guilty of misconduct and was unfit was
arbitrary and capricious.   In finding that the plaintiff had
standing to bring the suit, the Second Circuit reasoned that
"[i]t is self-evident that [the plaintiff's] reputation will be
blackened by the [NCUA's] finding of misconduct and unfitness."
*Id.* at 162.

*Kendall v. Russell, et al.*
Civil No. 2007-126
Memorandum Opinion
Page 11

behavior."[12] *Id.* at 57.  The Judicial Council had issued the
reprimand pursuant to the Judicial Conduct and Disability Act of
1980, 28 U.S.C. § 372(c).  The judge subsequently brought suit in
district court, alleging various constitutional violations.  The
district court granted summary judgment for the defendant on
almost all of the judge's claims.  In reviewing the district
court's ruling -- and before reaching the merits of the judge's
claims -- the D.C. Circuit held that the judge had standing to
challenge the reprimand, reasoning that although the reprimand
produced no legal effect on the judge, it naturally had a
negative impact on his reputation. *See id.*

Here, the imminence of the Commission's proceedings, and the
direct and potentially prejudicial impact they could have on
Kendall's reputation and career, make this matter a live
controversy as contemplated by Article III of the Constitution.
*See*, *e.g.*, *id.* ("[T]he official characterization of an apparently
upstanding federal judge as having engaged for a number of years

---

[12]   The reprimand was "posted on the website of the Fifth
Circuit Court of Appeals, with a link on the home page alongside
items for current use such as the court's calendar and opinions."
*McBryde*, 264 F.3d at 56-57.

The reprimand was accompanied by an order that no new cases
be assigned to the judge for one year, and that for three years
he could not preside over cases involving the lawyers who had
participated in an investigation into his conduct on the bench.
*See id.* at 54.

*Kendall v. Russell, et al.*
Civil No. 2007-126
Memorandum Opinion
Page 12

in a pattern of abusive behavior that was prejudicial to the
effective and expeditious administration of the business of the
courts inflicts, we think, enough injury.") (internal quotations
omitted); *cf. Advanced Mgmt. Tech., Inc. v. Fed. Aviation Admin.*,
211 F.3d 633, 636-37 (D.C. Cir. 2000) (rejecting a reputational
injury argument as "speculative" based on a "sparse record" as to
the present and future consequences for the petitioner's
business).  Kendall has thus sufficiently alleged an injury in
fact on which standing may be predicated.[13]

The second element of standing -- causation -- is likewise
satisfied because Kendall alleges that his reputation will be
indelibly stained if the Commission takes adverse action against
him in the form of removal proceedings. *See*, *e.g.*, *Daniel Boone
Area Sch. Dist. v. Lehman Bros., Inc.*, 187 F. Supp. 2d 400, 413
(W.D. Pa. 2002) (finding that the plaintiff had standing where
his alleged injuries were traceable to the defendant's conduct);
*cf. Allen v. Wright*, 468 U.S. 737, 756 (1984) ("In this case,
respondents' second claim of injury cannot support standing

---

[13]  The Court's finding that Kendall has sufficiently pled
an injury in fact in no way bears on the merits of Kendall's
claim.  As the Second Circuit noted in *Nash v. Califano*, 613 F.2d
10 (2d Cir. 1980), in deciding "that the alleged invasion of the
appellant's statutory right to decisional independence . . .
presents a justiciable controversy, and that the appellant has
standing to bring suit[,] . . .[w]e do not, of course, express
any views on the merits of appellant's claims." *Id.* at 11.

*Kendall v. Russell, et al.*
Civil No. 2007-126
Memorandum Opinion
Page 13

because the injury alleged is not fairly traceable to the
Government conduct respondents challenge as unlawful.").

Finally, the third element of standing -- redressability --
is also met because a finding by this Court that Act 3876
violates the ROA will preclude the Commission from engaging in
conduct that will harm the thing that Kendall seeks to protect --
his reputation. *See Meese*, 481 U.S. at 475 (noting the "risk of
injury to [the appellee's] reputation and of an impairment of his
political career"); *cf. Fioriglio v. New Jersey Dep't of
Personnel*, Civ. No. 95-3422, 1996 U.S. Dist. LEXIS 15399, at *19-
20 (D.N.J. Oct. 15, 1996) (finding that the plaintiff lacked
standing where "it is uncertain that this court would be able to
redress his purported injuries . . . ."), *aff'd* 166 F.3d 1205 (3d
Cir. 1998).

Accordingly, Kendall has standing to bring this suit.[14]

**3.   Abstention**

While Kendall has standing to bring his claims in federal
court, the fact that several territorial entities are involved in
this dispute, as well as the fact that territorial proceedings
have already commenced, are grounds for this Court to move
cautiously and, perhaps, to exercise restraint on a matter that

---

[14]  Because the Court finds that Kendall has alleged adequate
reputational injury to bring this action, the Court need not
address his allegation of injury to judicial independence.

*Kendall v. Russell, et al.*
Civil No. 2007-126
Memorandum Opinion
Page 14

appears to implicate considerable local interests.  Consequently, this Court must determine whether to abstain from even considering enjoining the Commission from pursuing removal proceedings.[15]

Federal court abstention in matters that implicate significant state interests is not new.  Indeed, in *Younger v. Harris*, 401 U.S. 37 (1971), the Supreme Court held that, absent extraordinary circumstances, federal courts must abstain from interfering with pending state criminal prosecutions.  The Court based its decision on "the longstanding public policy against federal court interference with state court proceedings." *Id.* at 43.  While *Younger* involved a state criminal prosecution, "the national policy against enjoining pending state court proceedings has since been extended to noncriminal judicial proceedings." *Zahl v. Harper*, 282 F.3d 204, 208 (3d Cir. 2002).

Abstention is appropriate under *Younger* where "(1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise the federal claims." *Schall v. Joyce*, 885 F.2d 101, 106 (3d Cir.

_____

[15]  Neither of the parties raised the possibility of abstention.  In light of the significant interests presented in this matter, the Court *sua sponte* raised that possibility and directed the parties to brief the issue.

*Kendall v. Russell, et al.*
Civil No. 2007-126
Memorandum Opinion
Page 15

1989); *see also Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423, 432 (1982); *Kentucky West Virginia Gas Co. v. Pennsylvania PUC*, 791 F.2d 1111, 1116 (3d Cir. 1986).

The first *Younger* factor asks whether the Commission's proceedings are "judicial" in nature. *See Middlesex*, 457 U.S. at 433; *see also Citizens for a Strong Ohio v. Marsh*, 123 Fed. Appx. 630, 634 (6th Cir. 2005); *Marcal Paper Mills, Inc. v. Ewing*, 790 F.2d 195, 197 (1st Cir. 1986). While there are no bright-line rules for analyzing this factor, the United States Supreme Court has explained that whether a proceeding is judicial in nature depends not upon the form of the proceeding, but upon its nature and effect. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 481 (1983). The Supreme Court has also held that a proceeding is judicial in nature if it "investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist." *See Prentis v. Atlantic Coast Line Co.*, 211 U.S. 210, 226 (1908). The fact that a proceeding is not presided over by a judicial officer or that a full range of due process rights is not afforded is not dispositive of the judicial nature of the proceeding for *Younger* purposes. *Feldman*, 460 U.S. at 476-79.

In applying these principles, other courts have found that proceedings that are judicial in nature "provide the type of

*Kendall v. Russell, et al.*
Civil No. 2007-126
Memorandum Opinion
Page 16

procedural safeguards found in formal court proceedings," *see*

*Alleghany Corp. v. Haase*, 708 F. Supp. 1507, 1528-29 (W.D. Wis.

1988), or have "trial-like trappings," *see Telco Communications,*

*Inc. v. Carbaugh*, 885 F.2d 1225, 1228 (1st Cir. 1989).  In all

instances, some form of state-court review is afforded the

parties appearing in the state proceedings. *See*, *e.g.*, *Middlesex*,

457 U.S. at 433 (reasoning that "filing a complaint with the

local Ethics and Grievance Committee is in effect a filing with

the Supreme Court [of New Jersey]").

     Here, the Commission's proceedings "bear[] several of the

traditional indicia of a judicial action." *See*, *e.g.*, *Coruzzi v.*

*New Jersey*, 705 F.2d 688, 690 (3d Cir. 1983).  A judge under

investigation by the Commission is given notice of the hearings

into his conduct and the nature of the matters under inquiry. *See*

V.I. CODE ANN. tit. 4, § 657(b)(2).  The Virgin Islands Code also

provides that a judge under investigation shall be admitted to

such hearings and be represented by counsel, offer evidence in

his own behalf, and confront and cross-examine witnesses against

him. *See id.*

     Unlike other state proceedings that have been regarded as

judicial in nature, however, not only does the Act fail to

provide an avenue for state-court review, but it fails to provide

any valid legal avenue for judicial review.  Indeed, the Act

*Kendall v. Russell, et al.*
Civil No. 2007-126
Memorandum Opinion
Page 17

provides that removal and involuntary retirement orders by the

Commission are reviewed not by a Virgin Islands court, but by

this Court. *See* V.I. CODE ANN. tit. 4, § 659 ("Upon the filing by

the Commission of any order of removal or involuntary retirement

in the district court, . . . the district court shall review the

proceedings giving rise to such order and shall either affirm or

reverse the order . . . ."). By vesting this Court with

jurisdiction to review the Commission's orders, however, the

Legislature has done that which it is not authorized to do. *See*,

*e.g.*, *Estate of Thomas Mall, Inc. v. Territorial Court of Virgin*

*Islands*, 923 F.2d 258, 261 (3d Cir. 1991) (noting that "the

Virgin Islands legislature has no power . . . to grant

jurisdiction in the District Court. . . . Only Congress has

th[at] power . . . ."); *see also Duchek v. Jacobi*, 646 F.2d 415,

419 (9th Cir. 1981) ("[T]he states have no power directly to

enlarge . . . federal jurisdiction."); *In re Borough of Fort Lee*,

230 F.2d 200, 203 (3d Cir. 1956) (noting that a state legislature

"could hardly confer upon a federal court or judge jurisdiction

not authorized by Congress"); *Deitz v. Comcast Corp.*, Civ. No.

06-06352, 2006 U.S. Dist. LEXIS 94333, at *11 (N.D. Cal. Dec. 21,

2006) ("No state legislature may attempt to confer jurisdiction

on a federal court."). The absence of a valid avenue of judicial

review of the Commission's orders suggests that the Commission's

*Kendall v. Russell, et al.*
Civil No. 2007-126
Memorandum Opinion
Page 18

proceedings are arguably not "judicial" in nature.

The second *Younger* factor requires the Court to determine whether the Commission's proceedings involve important territorial interests. *See*, *e.g.*, *Moore v. Sims*, 442 U.S. 415, 423 (1979); *Juidice v. Vail*, 430 U.S. 327 (1977); *Trainor v. Hernandez*, 431 U.S. 434 (1977); *Huffman v. Pursue, Ltd.*, 420 U.S. 592 (1975). There can be little doubt that the removal proceedings against Kendall implicate the Virgin Islands' interests in "regulating the conduct of the members of its judiciary, and in preserving the integrity of the [territory's] judicial branch." *See*, *e.g.*, *Coruzzi*, 705 F.2d at 691 (reasoning that "New Jersey's interests in assuring the ethical conduct of its judges and in maintaining the integrity of its judiciary are . . . significant"); *see also Middlesex*, 457 U.S. at 434 ("New Jersey has an extremely important interest in maintaining and assuring the professional conduct of the attorneys it licenses.").

With respect to the third *Younger* factor, the Court must determine whether the territorial proceedings would afford Kendall an adequate opportunity to raise his federal claims. *See*, *e.g.*, *Gibson v. Berryhill*, 411 U.S. 564, 577 (1973). By its plain language, Act 3876 empowers the Commission only "to retire or remove a judge of the Superior Court of the Virgin Islands."

*Kendall v. Russell, et al.*
Civil No. 2007-126
Memorandum Opinion
Page 19

V.I. CODE ANN. tit. 4, § 651.  Nothing in Act 3876 suggests that the Commission would, or is authorized to, hear separation of powers claims that implicate an alleged violation of a federal statute.

Furthermore, courts concluding that *Younger* abstention applied where the state proceedings provided an adequate opportunity to raise constitutional claims have predicated their findings in part on the fact that those proceedings were ultimately reviewable by a state court. *See*, *e.g.*, *Middlesex*, 457 U.S. at 435-36[16] ("In light of the unique relationship between the New Jersey Supreme Court and the local Ethics Committee, . . . it is difficult to conclude that there was no 'adequate opportunity' for [the plaintiff lawyer] to raise his constitutional claims."); *Coruzzi*, 705 F.2d at 691 (stating that the plaintiff judge could have appealed an order of the New Jersey Supreme Court suspending his pay to that court); *Hunter v.*

---

[16]  Although in the context of the first *Younger* factor, the *Middlesex* Court explained:

> From the very beginning a disciplinary proceeding is judicial in nature, initiated by filing a complaint with an ethics and grievance committee.  It is clear beyond doubt that the New Jersey Supreme Court considers its bar disciplinary proceedings as judicial in nature.

*Middlesex*, 457 U.S. at 433-34 (internal quotations and citations omitted).

*Kendall v. Russell, et al.*
Civil No. 2007-126
Memorandum Opinion
Page 20

*Supreme Court*, 951 F. Supp. 1161, 1174 (D.N.J. 1996) (reasoning that the plaintiff judge had "a 'full and fair' opportunity to litigate his constitutional claims [where his] arguments presented to the [Advisory Committee on Judicial Conduct] became part of the record before the Supreme Court [of New Jersey]").

Indeed, other courts have found abstention proper under *Younger* where the subject proceedings were within the jurisdiction of the state judiciary. *See*, *e.g.*, *Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.*, 477 U.S. 619, 629 (1986) (noting that abstention was appropriate where the "constitutional claims may be raised in state-court judicial review of the administrative proceeding"); *Kenneally v. Lungren*, 967 F.2d 329, 332 (9th Cir. 1992) ("[E]ven if a federal plaintiff cannot raise his constitutional claims in state administrative proceedings that implicate important state interests, his ability to raise the claims via state judicial review of the administrative proceedings suffices."); *W.K. by W.K. v. New Jersey Div. of Developmental Disabilities*, 974 F. Supp. 791, 794 (D.N.J. 1997) (applying *Younger* because "[t]he proper forum for review of [the administrative] agency's final action is the New Jersey Superior Court, Appellate Division").

Here, in contrast, there is no evidence that a complaint before the Commission is the equivalent of a petition before the

*Kendall v. Russell, et al.*
Civil No. 2007-126
Memorandum Opinion
Page 21

Supreme Court of the Virgin Islands, or any other Virgin Islands court.[17]  In fact, the evidence shows that just the opposite is true.  As noted above, Act 3876 provides that an order of removal by the Commission "become[s] effective upon affirmance of an appeal . . . filed in the district court . . . ." V.I. CODE ANN. tit. 4, § 656(a)(2)(C).  Even assuming the Act provided for review of the Commission's orders in this Court -- which, as discussed above, the Legislature cannot do -- that review would not be in a court created by the Virgin Islands Legislature.  Accordingly, Kendall could never litigate his federal claims in a Virgin Islands court.

The facts of this case, coupled with the unique structure of government in the Virgin Islands, admittedly present difficult questions under traditional abstention principles.  On balance, however, careful consideration of the *Younger* factors weighs in favor of this Court's review of Kendall's claims.

B.  **Kendall's Claims**

The relief that Kendall seeks in this matter is a permanent injunction to prevent the Commission from pursuing removal proceedings against him.

---

[17]   Indeed, if that were the case, a complaint against a justice of the Supreme Court of the Virgin Islands would in effect be a complaint before the tribunal on which that justice sits.  Certainly, the Legislature could not have intended such an occurrence.

*Kendall v. Russell, et al.*
Civil No. 2007-126
Memorandum Opinion
Page 22

In deciding whether to grant a permanent injunction, the
Court must consider whether: "(1) the moving party has shown
actual success on the merits; (2) the moving party will be
irreparably injured by the denial of injunctive relief; (3) the
granting of the permanent injunction will result in even greater
harm to the defendant; and (4) the injunction would be in the
public interest."[18] *Shields v. Zuccarini*, 254 F.3d 476, 482 (3d
Cir. 2001); *ACLU v. Black Horse Pike Regional Board of Education*,
84 F.3d 1471, 1477 nn. 2-3 (3d Cir. 1996).

The Court will address each factor necessary for the
issuance of a permanent injunction in turn.

**1.   Success on the Merits**

Kendall's several arguments challenge the effects of Act
3876.  The determination whether the challenged effects are valid
requires the Court to evaluate the legal underpinnings of the
Act.  That exercise necessarily involves this Court interpreting
the relevant provisions of the ROA and Act 3876.

The ROA is codified at Title 48, Chapter 12 of the United

---

[18]   "In deciding whether a permanent injunction should be
issued, the court must determine if the plaintiff has actually
succeeded on the merits (i.e. met its burden of proof).  If so,
the court must then consider the appropriate remedy." *Ciba-Geigy
Corp. v. Bolar Pharmaceutical Co., Inc.*, 747 F.2d 844, 850 (3d
Cir. 1984).  The decision to grant or deny permanent injunctive
relief is an act of equitable discretion by the court. *See
Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311-313 (1982).

*Kendall v. Russell, et al.*
Civil No. 2007-126
Memorandum Opinion
Page 23

States Code.[19]  Sections 1611 through 1617 set forth provisions

regarding the judicial branch of the Government of the Virgin

Islands.  The relevant provisions for the purpose of the matter

before the Court are found in Section 1611:[20]

>     (a) District Court of the Virgin Islands; local courts.
>     The judicial power of the Virgin Islands shall be
>     vested in a court of record designated the "District
>     Court of the Virgin Islands" established by Congress,
>     and in such appellate court and lower local courts as
>     may have been or may hereafter be established by local
>     law.
>
>     (b) Jurisdiction. The legislature of the Virgin Islands
>     may vest in the courts of the Virgin Islands
>     established by local law jurisdiction over all causes
>     in the Virgin Islands over which any court established
>     by the Constitution and laws of the United States does
>     not have exclusive jurisdiction.  Such jurisdiction
>     shall be subject to the concurrent jurisdiction
>     conferred on the District Court of the Virgin Islands
>     by section 22(a) and (c) of this Act.
>
>     (c) Practice and procedure. The rules governing the
>     practice and procedure of the courts established by
>     local law and those prescribing the qualifications and
>     duties of the judges and officers thereof, oaths and
>     bonds, and the times and places of holding court shall
>     be governed by local law or the rules promulgated by
>     those courts.

--------

[19]  The ROA functions as the congressionally-enacted
constitution of the Virgin Islands. *See Government of the Virgin
Islands v. Harmon*, 289 F. Supp. 2d 685, 686 (D.V.I. 2003).

[20]  The other provisions of Title Four, Chapter 12 are not
germane to the dispute in this matter.  Those provisions set
forth, *inter alia*, the jurisdiction of this Court and provide for
appellate review of this Court's decisions by the Third Circuit
Court of Appeals.

*Kendall v. Russell, et al.*
Civil No. 2007-126
Memorandum Opinion
Page 24

48 U.S.C. § 1611.

In determining the effect of Section 1611, the Court is guided by general principles of statutory construction. "Perhaps the most fundamental principle of statutory construction is that words in a statute must be given their ordinary meaning whenever possible." *Alaka v. AG of the United States*, 456 F.3d 88, 104 (3d Cir. 2006) (quoting *Okeke v. Gonzales*, 407 F.3d 585, 593 (3d Cir. 2005)); *see also In re Oakwood Homes Corp.*, 449 F.3d 588, 595 (3d Cir. 2006) ("We begin as we must with the plain language of the statute."). Furthermore, "[a]s a general rule of statutory construction, where the terms of a statute are unambiguous, judicial inquiry is complete." *Sabree v. Richman*, 367 F.3d 180, 190 (3d Cir. 2004) (quoting *Adams Fruit Co. v. Barrett*, 494 U.S. 638, 642 (1990)).

In this matter, the language employed in Section 1611 of the ROA is unambiguous. The plain language of Section 1611(a) provides for the establishment of this Court by Congress, and empowers the Virgin Islands Legislature to establish local courts of the Virgin Islands. Consistent with that power, the Legislature has established the Superior Court of the Virgin Islands and the Supreme Court of the Virgin Islands. *See* Act of Oct. 29, 2004, No. 6687, sec. 6, § 2, 2004 V.I. Legis. 6687 (2004).

*Kendall v. Russell, et al.*
Civil No. 2007-126
Memorandum Opinion
Page 25

The plain language of Section 1611(b) empowers the Virgin Islands Legislature to vest jurisdiction in the local courts over any matter over which this Court does not have exclusive jurisdiction.  That section further provides that the local courts' jurisdiction may include concurrent jurisdiction with this Court over both federal questions and certain criminal actions.  Consistent with its power under the ROA, the Legislature has vested exclusive jurisdiction in the Superior Court over certain civil and criminal actions as well as all violations of police and executive regulations. *See* V.I. Code Ann. tit. 4, § 75.  The Legislature has likewise vested jurisdiction in the Supreme Court over all appeals arising from final judgments, final decrees or final orders of the Superior Court. *See id.* at § 32.

Finally, the plain language of Section 1611(c) leaves to the Virgin Islands Legislature and the courts created by the Legislature the authority to devise rules governing practice and procedure in those courts.  That authority includes the prescription of qualifications and duties of judges of those courts.  Again, consistent with that power, the Legislature has imposed certain eligibility requirements on prospective Superior Court judges. *See id.* at § 72 (requiring, *inter alia*, that the candidate be a member in good standing of the Virgin Islands

*Kendall v. Russell, et al.*
Civil No. 2007-126
Memorandum Opinion
Page 26

Bar).

Significantly, after an exhaustive review, the Court has found no provision in the ROA that authorizes the Virgin Islands Legislature to remove judges of the local courts. The absence of any provision on this point suggests that Congress did not intend to confer such authority on the Virgin Islands Legislature. *See*, *e.g.*, *Scripps-Howard Radio, Inc. v. FCC*, 316 U.S. 4, 11 (1942) ("[T]he search for significance in the silence of Congress is too often the pursuit of a mirage."); *Conoco, Inc. v. Hodel*, 626 F. Supp. 287, 293 (D.N.J. 1986) ("To infer intent from congressional silence, and to elevate that silence over a positive congressional enactment, entirely distorts legislative intent.").

The notion that Congress was coy with respect to authorizing removal of judges of locally-created courts in the ROA, and thus that such authority must be inferred, is belied by specific provisions in the ROA in which Congress made express grants of removal power. For instance, Congress empowered the President of the United States to remove a judge of this Court. *See* 48 U.S.C. § 1614(a) (stating that "judges for the District Court of the Virgin Islands . . . shall hold office for terms of ten years and until their successors are chosen and qualified, unless sooner removed by the President for cause"). Congress also expressly granted the Governor of the Virgin Islands the power to remove

*Kendall v. Russell, et al.*
Civil No. 2007-126
Memorandum Opinion
Page 27

the heads of the executive departments created by the ROA. *See id.* at §§ 1591, 1597(c) (stating that "[t]he heads of the executive departments . . . shall hold office during the continuance in office of the Governor by whom he is appointed . . ., unless sooner removed by the Governor"). Finally, Congress provided for the removal of all elected public officials by recall. *See id.* at § 1593(c) ("An elected public official of the Virgin Islands may be removed from office by a recall election carried out under this subsection.").

Congress' express grants of removal power in the ROA provide further evidence that Congress did not intend to vest such power in the Virgin Islands Legislature. *See*, *e.g.*, *Russello v. United States*, 464 U.S. 16, 23 (1983) ("[Where] Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (quoting *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972)); *United States v. Naftalin*, 441 U.S. 768, 773 (1979) (rejecting the respondent's contention that a phrase used in one section of a statute should be read into other sections of the same statute because "Congress did not write the statute that way"); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1201 (3d Cir. 1993)

Kendall v. Russell, et al.
Civil No. 2007-126
Memorandum Opinion
Page 28

("When Congress addresses a subject in only one section of a
reticulated statute, we assume the decision to omit the topic in
another section was intentional."); *Pena-Cabanillas v. United
States*, 394 F.2d 785, 789 (9th Cir. 1968) ("[W]here Congress has
carefully employed a term in one place and excluded it in
another, it should not be implied where excluded.") (citation
omitted).

     Despite the absence of such an express grant of authority to
remove judges, Act 3876 authorizes the Commission to do one thing
-- remove a judge from office.  In fact, the Act makes no
provision for an outcome short of removal.  That outcome,
standing alone, is not necessarily problematic.  Indeed, many
jurisdictions provide for the removal of judges. *See*, *e.g.*, *In re
Judicial Conduct Comm.*, 855 A.2d 535, 539 (N.H. 2004) ("[T]he
legislature has the power, expressly granted by the constitution,
to remove a judge from office by impeachment or, together with
the executive, by address."); *In re Dunleavy*, 838 A.2d 338, 347
n.15 (Me. 2003) ("[T]he Legislature through joint action with the
governor has the authority to remove judicial officers during
their terms either by impeachment or address."); *In re Ferguson*,
403 S.E.2d 628, 629 (S.C. 1991) (noting that a judge "may only be
removed from office by the Legislature pursuant to impeachment
proceedings").  In each such jurisdiction, however, removal

*Kendall v. Russell, et al.*
Civil No. 2007-126
Memorandum Opinion
Page 29

authority is predicated on some legal authority, usually a state constitution. *See*, *e.g.*, *In re Duckman*, 699 N.E.2d 872, 883 (N.Y. 1998) (citing N.Y. Const., art. VI, § 23); *In re Probert*, 308 N.W.2d 773, 779 n.12 (Mich. 1981) (citing Mich. Const. art. XI, § 7); *National Freight, Inc. v. Ostroff*, 337 A.2d 647, 648 (N.J. Super Ct. Law Div. 1975) (citing N.J. Const., art. VII, § 3).

Here, the Virgin Islands Legislature has assumed the authority to remove judges, and delegated that authority to the Commission by way of Act 3876.  Given the significance of the power to remove officials from public office, however, that authority is not to be lightly inferred. *See*, *e.g.*, *Seidman v. Office of Thrift Supervision, Dep't of the Treasury*, 37 F.3d 911, 929 (3d Cir. 1994) (noting "the . . . serious sanction of . . . removal from office . . . .").

Indeed, the exercise of the Legislature's authority to remove judges must be grounded in some source. *See*, *e.g.*, *Brow v. Farrelly*, 994 F.2d 1027, 1035 n.6 (3d Cir. 1993) ("It is axiomatic . . . that the Virgin Islands legislature may not enact laws beyond the limits of the authority Congress vested in it.") (citing *Norman's on the Waterfront, Inc. v. Wheatley*, 317 F. Supp. 247, 250 (D.V.I. 1970), *aff'd*, 444 F.2d 1011 (3d Cir. 1971)); *see also* 48 U.S.C. § 1574(a) ("The legislative authority and power of the Virgin Islands shall extend to all rightful

*Kendall v. Russell, et al.*
Civil No. 2007-126
Memorandum Opinion
Page 30

subjects of legislation not inconsistent with [the ROA]."). Similarly, all acts of the Legislature must be consistent with federal law. *See Brow*, 994 F.2d at 1035 n.6; *Abiff v. Virgin Islands Legislature*, 216 F. Supp. 2d 455, 460 (D.V.I. 2002); *see also* 48 U.S.C. § 1574(a) ("The legislative authority and power of the Virgin Islands shall extend to all rightful subjects of legislation not inconsistent with . . . the laws of the United States."). The exercise of the authority vested in the Commission is precisely the type of exercise that exceeds the limits of the ROA.

The Legislature's overreach becomes even clearer when Act 3876 is compared to a strikingly similar provision in the District of Columbia Code.[21] That provision, codified at Title 11, Chapter 15, establishes a District of Columbia Commission on Judicial Disabilities and Tenure (the "D.C. Commission"). *See* D.C. Code § 11-1521. Like Act 3876, the D.C. Code sets forth rules and regulations regarding the D.C. Commission's membership, terms of office of members, compensation of members, personnel matters, removal and involuntary retirement proceedings, internal operating procedures, confidentiality, and judicial review. Significantly, the District Court for the District of Columbia,

---

[21] Although the record in this matter does not indicate so conclusively, the language of Act 3876 appears to be taken practically verbatim from the D.C. Code.

*Kendall v. Russell, et al.*
Civil No. 2007-126
Memorandum Opinion
Page 31

in discussing the D.C. Commission, noted that Congress passed

legislation in 1970 to create the Commission "*pursuant to its*

*power* to 'exercise exclusive Legislation' over the District of

Columbia under Art. I, § 8, cl. 17, of the United States

Constitution." *See Halleck v. Berliner*, 427 F. Supp. 1225, 1230

(D.D.C. 1977) (emphasis supplied).[22]   The *Halleck* Court further

---

[22]   In *Halleck*, a judge of the Superior Court of the District
of Columbia filed an action for declaratory and injunctive
relief.  The judge sought to have the court, *inter alia*, (1)
declare unconstitutional certain provisions of the statute
creating the D.C. Commission and (2) declare unconstitutional
section 11-1526(a)(2)(C) of the D.C. Code, dealing with the
disciplinary responsibilities of the D.C. Commission. *Halleck*,
427 F. Supp. at 1229-30.  The judge claimed that the challenged
provisions encroached on judicial independence, in violation of
the principle of separation of powers.  In rejecting those claims
and upholding the D.C. statute, the court held, in pertinent
part:

> The Commission is an independent body, designed to
> exercise its statutorily created disciplinary functions
> free from the influence of either the executive or
> legislative branches.  Disciplinary orders of the
> Commission are subject to review by a special court
> composed of federal judges, . . . not by either the
> executive or legislative branches.  The evidence in
> this case does not show any such intrusion into the
> Commission's activities by present or former Assistant
> United States Attorneys as would indicate that the
> Commission has not been operating as an independent
> body during the pending disciplinary proceedings.  This
> court concludes that neither the limited disciplinary
> powers given to the Commission in § 11-1526 nor the
> activities of the Commission in its proceedings against
> plaintiff to date encroaches upon the independence of
> the judiciary of the District of Columbia.

*Id.* at 1240 (internal citation omitted).

*Kendall v. Russell, et al.*
Civil No. 2007-126
Memorandum Opinion
Page 32

noted that in 1973, Congress enacted the District of Columbia

Self-Government and Governmental Reorganization Act (the Home

Rule Act) by "again exercis[ing] its Art. I, § 8, cl. 17

power."[23] *See id.*

    Here, in contrast, Congress did not create the Commission

pursuant to its power under Article IV, Section 3, Clause 2 of

the United States Constitution to govern territories.[24]  Nor is

---

    [23]  The decision in *Halleck* implicitly finds further support
in *In re Judicial Conduct Comm.*, 855 A.2d 535 (N.H. 2004).  In
that case, the Judicial Conduct Committee, a creation of the New
Hampshire Supreme Court, brought an action before that court for
a determination of the constitutionality -- under New Hampshire's
constitution -- of a state statute.  In that statute, the New
Hampshire legislature created the Judicial Conduct Commission "to
provide for the orderly and efficient administration of the Code
of Judicial Conduct . . . ." *Id.* at 536.  The statute empowered
the Judicial Conduct Commission to consider and investigate the
conduct of state judges and to commence disciplinary proceedings
against them. *Id.* at 536-37.  In ruling that the statute was
unconstitutional, the New Hampshire Supreme Court agreed with the
Judicial Conduct Committee that the statute encroached on the
power of that court to regulate the conduct of the judiciary, and
purported to declare the Judicial Conduct Commission the sole
authority to regulate the conduct of judges. *Id.* at 537.  The
court held that the statute "commandeered" that authority away
from the judicial branch. *Id.* at 537.  Significantly, however,
the court also held that "*the legislature has the power,
expressly granted by the constitution, to remove a judge* from
office by impeachment or, together with the executive, by
address." *Id.* at 539 (emphasis supplied).  Thus, the court held
that the legislature had "full authority to make, implement and
interpret rules pertaining to impeachment." *Id.* at 540.

    [24]  Article IV, Section 3, Clause 2 provides:

    The Congress shall have Power to dispose of and make
    all needful Rules and Regulations respecting the
    Territory or other Property belonging to the United

*Kendall v. Russell, et al.*
Civil No. 2007-126
Memorandum Opinion
Page 33

there any conclusive evidence that Congress acted pursuant to
that power to vest the authority to create the Commission in the
Virgin Islands Legislature.  In other words, whereas Congress
established the D.C. Commission pursuant to the authority vested
in it by the United States Constitution, the Virgin Islands
Legislature established the Commission in this matter pursuant to
no authority whatever.

Because the Virgin Islands Legislature does not have the
power under the ROA to remove judges of the Superior Court or
justices of the Supreme Court of the Virgin Islands, it logically
follows that the Legislature cannot delegate such power to the
Commission. *See*, *e.g.*, *City Capital Associates Ltd. Partnership
v. Interco, Inc.*, 696 F. Supp. 1551, 1556 (D. Del. 1988) ("The
government . . . cannot delegate authority it does not
possess."), *aff'd* 860 F.2d 60 (3d Cir. 1988); *Juster Bros. v.
Christgau*, 7 N.W.2d 501, 507 (Minn. 1943) ("Clearly, what the
legislature cannot do itself is ultra vires an administrative
body with only delegated legislative power."), *cited with
approval in United States v. Bowen*, 414 F.2d 1268, 1275 (3d Cir.
1969).

The Defendants contend that the ROA does in fact vest

---

States; and nothing in this Constitution shall be so
construed as to Prejudice any Claims of the United
States, or of any particular State.

Kendall v. Russell, et al.
Civil No. 2007-126
Memorandum Opinion
Page 34

removal power in the Legislature.  In support of that contention,

the Defendants rely on the Third Circuit's opinion in *Smith v.*

*Magras*, 124 F.3d 457 (3d Cir. 1997).  In *Smith*, the plaintiffs

were Virgin Islands attorneys who were non-partner members of a

law firm.  The plaintiffs sought an injunction against the

requirement, imposed by the defendant, the Commissioner of the

Virgin Islands Department of Licensing and Consumer Affairs, that

they obtain a business license pursuant to a statute enacted by

the Virgin Islands Legislature.  In holding that the statute did

not violate the principle of separation of powers, the Third

Circuit relied in part on Section 1611(c) of the ROA.[25]

    The Defendants appear to rely on *Smith* for the proposition

_____

    [25]  In reference to Section 1611(c), the Third Circuit
reasoned:

>     It is thus clear from the Organic Act itself that local
>     law -- enacted by the Virgin Islands legislature -- may
>     have some role to play in the regulation of attorneys
>     (officers of the court).  Put differently, the Organic
>     Act envisions the possibility of the sharing of power
>     over the regulation of attorneys between the Virgin
>     Islands courts and the Virgin Islands legislature, at
>     least to the extent of imposing a license fee.  The
>     possibility of that sharing itself disposes of the
>     argument that the application of the licensing scheme
>     to attorneys violates the principle of separation of
>     powers.

*Smith*, 124 F.3d at 466.  Based on these principles, the Third
Circuit further reasoned that "Congress allowed for the creation
of local Virgin Islands courts; it can certainly restrict their
power.  In this case, Congress did so by including in § 1611(c)
the possibility of a sharing arrangement." *Id.*

*Kendall v. Russell, et al.*
Civil No. 2007-126
Memorandum Opinion
Page 35

that Section 1611(c)'s express grant of power to the Legislature

and the Virgin Islands courts to mandate the qualifications and

duties of local judges is tantamount to the power to correct for

any violation of those qualifications and duties once a judge has

already assumed the bench.  The Defendants have not cited, nor

has the Court found, any authority for that proposition.

Moreover, the Defendants overlook the fact that the *Smith* Court

appeared to restrict its findings to the facts in that case. *See*

*Smith*, 124 F.3d at 466-67.  Given the importance of the issues

raised in this matter, the Court declines to extrapolate from the

relatively narrow dicta in *Smith* any definitive statement by the

Third Circuit on the power of the Legislature to remove judges.

*See*, *e.g.*, *General Ry. Signal Co. v. Engeleiter*, 969 F.2d 519,

520 (7th Cir. 1992) (vacating a decision by the district court,

which had "only infer[red]" an earlier holding by the circuit

court, and had thus "misapprehended the impact of [its]

remarks"); *United States v. Heideman*, 21 F.R.D. 335, 338 (D.D.C.

1958) (finding that "[i]t would not do . . . to infer that on

such an important issue" a Supreme Court case was meant to be

overruled "by implication").[26]

---

[26]  The Defendants also rely on the legislative history of
Act 3876.  The Defendants point to amendments to Title Four of
the Virgin Islands Code that provided that judges of the then-
Municipal Court of the Virgin Islands could be removed or retired
pursuant to other provisions of that title.  The Defendants

*Kendall v. Russell, et al.*
Civil No. 2007-126
Memorandum Opinion
Page 36

The Defendants also assert that Congress enacted amendments
to the ROA in 1984, several years after the enactment of Act
3876.  The Defendants rely on Congress' failure to annul the
Commission as a sign of Congress' tacit approval of the
Legislature's power to remove judges.  In effect, while it has
been observed famously that "silence is one of the hardest
arguments to refute,"[27] the Defendants ask the Court to make an
inference from congressional silence.  That approach presents an
opportunity for mischievous interpretation predicated on
unsupported inferences.  Given the importance of the issues
raised in this matter, the Court declines to adopt such an

_____

assert that with the passage of Act 3876, the Legislature
established additional qualifications for judges.  The Defendants
further contend that these qualifications were "intended to be
implemented not prior to commencement of a judge's tenure, but on
an on-going basis throughout his service on the bench." (Defs.'
Post-Trial Br. 16.)  The Defendants thus seem to assert that
because the Legislature has exceeded the bounds of the ROA in the
past, it may continue to do so today.  The Court fails to see how
this circular reasoning leads to a finding that Congress, by way
of the ROA, actually vested power in the Commission to remove
judges.  Moreover, as discussed above, because the ROA's plain,
unambiguous language governs its interpretation, resort to
legislative history is unwarranted. *See*, *e.g.*, *United States v.
Gonzales*, 520 U.S. 1, 6 (1997) ("Given the straightforward
statutory command, there is no reason to resort to legislative
history.") (citing *Connecticut Nat. Bank v. Germain*, 503 U.S.
249, 254 (1992)); *United States v. Doe*, 980 F.2d 876, 877 (3d
Cir. 1992) ("There is no need to resort to legislative history
unless the statutory language is ambiguous.") (quoting *Velis v.
Kardanis*, 949 F.2d 78, 81 (3d Cir. 1991)).

[27]   Josh Billings (1818 - 1885).

Kendall v. Russell, et al.
Civil No. 2007-126
Memorandum Opinion
Page 37

approach and make such inferences. *See*, *e.g.*, *Scripps-Howard Radio, Inc.*, 316 U.S. at 11; *Jacquet v. Westerfield*, 569 F.2d 1339, 1342 (5th Cir. 1978) ("Given the inconclusive nature of the legislative history . . ., we decline to infer that Congress' silence indicates approval or disapproval."); *Fraass Survival Sys. v. Absentee Shawnee Economic Dev. Auth.*, 817 F. Supp. 7, 9 (S.D.N.Y. 1993) ("Although a court might reasonably interpret Congress's silence . . . as approval . . ., ratification by silence could not extend to unsettled (indeed unbroached) issues like the one before the Court."); *Conoco, Inc.*, 626 F. Supp. at 293.[28]

───────────────

[28]   The Defendants also seek support for their argument by asserting that the Commission is part of the judiciary and is therefore a judicial, not legislative, body.  That argument is unconvincing because it fails to identify the source of the Legislature's power to create any body with the authority to remove judges.

The Defendants also assert that

if the Commission were held an illegal body, created in violation of the constitutional mandate of the Organic Act, there would be no evident mechanism for removal of a judge under any circumstances.

(Defs.' Mem. in Reply to Opp'n to Mot. to Dismiss 11 n.10.)  The Defendants further point to the Superior Court's own finding that "[t]he Presiding Judge [of the Superior Court] has the authority to place the Governor-appointed judge in a certain division of the Court, but has no authority to appoint or remove judges from the [Superior Court]." *See Virgin Islands v. 8560 Square Feet of Land*, Civ. No. 844-1992, 1999 V.I. LEXIS 36, at *3 (Terr. Ct. Sept. 24, 1999).

*Kendall v. Russell, et al.*
Civil No. 2007-126
Memorandum Opinion
Page 38

In sum, none of the Defendants' arguments point to a definitive source that provides the Virgin Island Legislature's with the power to remove judges. Consequently, the Court finds that Act 3876 violates the ROA. Accordingly, Kendall has shown success on the merits.

### 2. Irreparable Injury

As for the second factor necessary for injunctive relief, Kendall claims that he will suffer irreparable harm to his "career, livelihood and reputation, and will subject him to politically-motivated public humiliation." (Pl.'s Mot. for a Prelim. Inj. 22.) Kendall further asserts that "[e]ven if he is ultimately vindicated, the proceedings threaten to chill his independent exercise of judicial discretion far into the future." (*Id.*)

Kendall's claim of harm to reputation constitutes irreparable injury sufficient to support the issuance of an injunction. *See*, *e.g.*, *Byrne v. Calastro*, 205 Fed. Appx. 10, 16 (3d Cir. 2006) (unpublished) (finding that the district court did

_____

To the extent the Defendants appear to argue in support of a legislative "rule of necessity," that argument is unpersuasive for the obvious reason that no such rule exists. The Court's task is to determine whether the Legislature acted within the bounds of its power, as derived from the ROA. Moreover, this Court "would not presume to ascribe [an apparent lack of removal power as to judges] to a simple mistake in draftsmanship." *See*, *e.g.*, *Russello v. United States*, 464 U.S. 16, 24 (1983).

*Kendall v. Russell, et al.*
Civil No. 2007-126
Memorandum Opinion
Page 39

not abuse its discretion by finding that the plaintiffs had made

an adequate showing that they would be irreparably harmed by

allegations of financial misconduct).[29]

Accordingly, Kendall has demonstrated irreparable injury

absent the issuance of an injunction.[30]

### 3.   Balance of the Equities

With respect to the third factor for injunctive relief,

Kendall argues that the Commission will suffer no harm if it is

enjoined.

In light of the great importance of the legal issues raised

in this matter, the Court finds that enjoining the Commission's

proceedings would not cause the Defendants any significant harm.

Indeed, the Defendants raise no argument to the contrary.

Accordingly, the Court finds that injunctive relief will not

harm the Defendants.

---

[29]   In *Byrne*, the Third Circuit noted that "[a]t least one
other Court of Appeals and several district courts have found . .
. harms [to reputation and image] sufficient for preliminary
injunction purposes." *Byrne*, 205 Fed. Appx. at 16 (citing
*International Bhd. of Teamsters v. Local Union No.* 810, 19 F.3d
786, 794 (2d Cir. 1994)).

[30]   Because Kendall's allegation of reputational harm
supports the issuance of an injunction, the Court need not
address his claim of harm to judicial independence.

*Kendall v. Russell, et al.*
Civil No. 2007-126
Memorandum Opinion
Page 40

### 4.  Public Interest

With respect to the fourth factor necessary for injunctive relief, Kendall asserts that "[t]he public interest would not be served by permitting an unconstitutional encroachment into the essential powers of the judiciary . . . ." (Pl.'s Mot. for a Prelim. Inj. 23.)

The Court again evokes the importance of the issues raised in this matter, and finds that the public interest is served by an adjudication of those issues. *See, e.g., Williams v. Alioto*, 549 F.2d 136, 144 (9th Cir. 1977) ("Undoubtedly, the public interest is served by a prompt adjudication of significant constitutional issues."); *cf. Crouch v. Prior*, Civ. No. 1995-108, 1995 U.S. Dist. LEXIS 16911, at *8 (D.V.I. Nov. 7, 1995) ("This Court declines to view the public interest arguments made by defendants regarding the need for unified corporate governance as being as strong as the public interest involving the constitutional issue of separation of powers.").  Indeed, an injunction to maintain the status quo serves the public interest by preventing the Legislature from exercising power -- and delegating such power -- that the ROA does not grant it.

Accordingly, the Court finds that an injunction would be in the public interest.

Kendall v. Russell, et al.
Civil No. 2007-126
Memorandum Opinion
Page 41

### III.   <u>CONCLUSION</u>

The Court is mindful of the Legislature's laudable intentions in creating the Commission.  The removal for cause of Superior Court judges would do much to maintain public confidence in the administration of justice. *See*, *e.g.*, *In re Jaritz*, 151 F.3d 93, 101 (3d Cir. 1998) (discussing "the intention of the Congress to charge the judicial councils of the circuits with the responsibility for doing all and whatever was necessary of an administrative character to maintain efficiency and public confidence in the administration of justice"); *see also Roy v. Jones*, 349 F. Supp. 315, 320 (W.D. Pa. 1972) (noting "the constitutionality of restraining a probate judge from exercising the duties of his office . . . for the purpose of protecting the purity of judicial processes and maintaining public confidence in the administration of justice") (internal quotations and citation omitted), *aff'd* 484 F.2d 96 (3d Cir. 1973).  That confidence undoubtedly would be undermined if a judge were found guilty of a serious felony, for instance, but nevertheless remained on the bench.  Such concerns notwithstanding, the issue squarely before the Court is not whether the Legislature's intentions were praiseworthy, but whether the Legislature's actions are consistent with the ROA.

The Defendants' perception that the ROA speaks of the

*Kendall v. Russell, et al.*
Civil No. 2007-126
Memorandum Opinion
Page 42

authority to remove judges in essence gives an ear and applause

to the anticipated performance of an unwritten symphony that no

orchestra has performed.  Significantly, that perception finds no

support in law.  Accordingly, the Court finds that Congress has

not granted the Virgin Islands Legislature the authority to

remove judges.  Thus, the Legislature may not delegate such

authority to the Commission.  The Court further finds that in the

absence of injunctive relief, Kendall will suffer irreparable

injury to his reputation and career.  Finally, given the

significance of the issues presented in this matter, the Court

finds that the balance of the equities and the public interest

favor injunctive relief.  As such, the Court will issue a

permanent injunction to prevent the Commission from commencing or

pursuing removal proceedings against Kendall.

An appropriate judgment follows.


**DATED: January 16, 2008**          S_____

                                        **Curtis V. Gómez**
                                         **Chief Judge**

copy:     Hon. Geoffrey W. Barnard
          Howard M. Cooper, Esq.
          Julie E. Green, Esq.
          Maria T. Hodge, Esq.
          Carol C. Jackson
          Lydia Trotman
          Claudette Donovan
          Olga Schneider
          Gregory F. Laufer